Marvin M. Glascock v. Commissioner.
Glascock v. Commissioner
Docket No. 13070.
United States Tax Court
1948 Tax Ct. Memo LEXIS 83; 7 T.C.M. (CCH) 675; T.C.M. (RIA) 48182; September 29, 1948
*83 Marvin M. Glascock, pro se. R. G. Harless, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency in the amount of $1,936.23 in petitioner's income tax for the calendar year 1945. The sole issue is whether or not the petitioner was a bona fide resident of Saudi Arabia, a foreign country, during the taxable year, and therefore exempt from taxation under the provisions of section 116 of the Internal Revenue Code. Findings of Fact The petitioner is a single man and citizen of the United States. He filed his Federal income tax return for the taxable year with the collector of internal revenue at Honolulu, Hawaii. His entire income for 1945 was salary for services performed by him while in Saudi Arabia, a foreign country. From June 1941 to June 1944, petitioner was in the employ of PacificNaval Base Construction Company as Diesel mechanic, which company did civilian construction work for the Navy. During most of this time he was at work on Johnston Island and Midway Island in the Pacific. These islands are not foreign countries, but are possessions of the United *84 States. After returning to San Francisco he entered the employ of Compania Constructora Bechtel-McCone, S.A., a South American corporation (hereafter called Company) by written contract (preliminary one dated October 7, 1944, and final at Saudi Arabia, December 29, 1944) to serve as a heavy duty mechanic on a job site near Ras Tanura, Saudi Arabia. The Company was there building an oil refinery for the Arabian-American Oil Co., a subsidiary of the Texas Company and the Standard Oil Company of California. Petitioner sailed from New York on October 20, 1944, and arrived at Ras Tanura, Saudi Arabia, on December 29, 1944, and remained in Saudi Arabia continuously without leave until June 11, 1946, when he returned to the United States. He was in Saudi Arabia about two weeks less than the 18 months required by the contract, his earlier return being due to the completion of the refinery. His employment contract with the Company was for 18 months' service from December 29, 1944, at a salary of $450 per month plus overtime, which was paid partly by allotment and the remainder deposited to his credit in a United States bank. He was given free transportation to and from the United States *85 and while in Saudi Arabia, free meals and sleeping accommodations. He, with about 1,000 other employees, also from the United States (260 of whom went on same ship with him), lived in dormitories near the work provided by the Company. Under paragraph 6 of the contract he was, while in Saudi Arabia, restricted in his movements outside of the construction area to "regulations and instructions" of the Company and it was "understood that trips outside of the construction area of necessity will be rigidly restricted, controlled and determined by the company." He was to engage in no other employment and not participate in local politics and abide by all laws of the country and locality in which he was working. Petitioner never applied for Arabian citizenship and neither did he pay any taxes to that country, none being due under an Arabian agreement. He was registered under the Selective Service law, but deferment was obtained by his employer for six months, and two additional extensions for the same period were granted. His United States passport, valid for one year, was extended at the request of his employer for an additional year. He went to Saudi Arabia intending to stay there *86 for 18 months as his employment contract required, but the evidence reveals no intention to stay longer. When free of his contractual obligation, he returned at once to the United States. The only other job available there at the expiration of his contract (as identified by him) was with the refinery, but it was not shown that he either sought or considered such employment. Paragraph 11 stipulated that upon the "completion" or "termination" of his services that he "must depart from the zone of operations on the date specified by the company," and paragraph 12, relating to "return passage", stipulated that the Company would determine "the class and route" of such return. Opinion Petitioner relies on section 116 (a) (1) of the Internal Revenue Code which, under conditions there prescribed, exempts from taxation earned income from sources without the United States. In substance this section provides for tax exemption, viz: "In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from *87 sources without the United States * * * if such amounts constitute earned income as defined in paragraph (3); * * *." It being undisputed that all of petitioner's income for 1945, the taxable year involved, was from sources without the United States and that all of it was earned income within the meaning of the law, and that he was physically present in Saudi Arabia, a foreign country during the entire taxable year, there remains only to be determined whether petitioner has shown by the evidence that he was a bona fide resident of Saudi Arabia in 1945. It is incumbent upon the petitioner to so show; otherwise respondent's action in denying the exemption must be sustained. Mere presence in a foreign country during the entire taxable year will not of itself be sufficient to establish him a "bona fide resident" of such country within the meaning of the law. Michael Downs v. Commissioner, 166 Fed. (2d) 504; affirming 7 T.C. 1053; certiorari denied, 334 U.S. 832. The language of section 116 (a) (1) in its present form was written into the law by the Revenue Act of 1942. Prior thereto, exemption from taxation thereunder was granted to "a bona *88 fide non-resident of the United States for more than six months during the taxable year." Congress evidently believed that mere non-residence for six months should not be sufficient grounds for non-taxability, and in lieu of six months non-residence required the taxpayer to be "a bona fide resident of a foreign country during the entire taxable year." Concerning the effect of the change in the law and the reasons of Congress therefor, the Circuit Court of Appeals for the Ninth Circuit, in the Michael Downs case, supra, said: "After the vicissitudes through which the original exemption section had passed, it is more than a fair assumption that when its amendment was under consideration, the law makers, had they intended mere absence from the United States during the tax year to bring the exemption into play, would have said so in simple nonmisunderstandable language. "Yet petitioners' position here, when reduced to the ultimate, is an argument that mere presence other than sojourning in the foreign lands for the full tax year ripens the right to the exemption. The words of Senator George, Chairman of the Senate Committee on Finance, belies such intention. (Hearings before the Committee, *89 H.R. 7378, 77th Cong., 2d Sess., Vol. 1, p. 743.) He explained that it was not intended to eliminate § 116 (a), the original exemption section, but to amend it so that a '* * * non-resident American citizen who establishes a home maintains his establishment and is taking on corresponding obligations of the home in any foreign country' may enjoy the exemption. And '* * * so that technicians, American citizens who are merely temporarily away from home, could be properly reached * * * for taxation purposes.' This was said in 1942, and was in reference to the very class of persons to which petitioners belonged." Senator George's statement is clearly applicable to the petitioner, and reveals that Congress did not intend to exempt from taxation one so situated. The essential facts here are not distinguishable from those in Michael Downs, supra, and Ralph Love, 8 T.C. 400, in each of which the Commissioner's action in denying the exemption claimed by the taxpayer was sustained. Indeed, the facts here present a much stronger case for respondent than those in Ralph Love, where the taxpayer was in Ireland for two years, married an Irish girl while there, and as *90 part of the wedding agreement he was to live in Ireland and go into business there. Petitioner cites and relies upon Audio Gray Harvey, 10 T.C. 183, wherein the taxpayer's claim was sustained. While there is some similarity, when all of the facts in the two cases are compared we think the difference in them is apparent and quite sufficient, not only to warrant, but to require a different result. Harvey served in foreign countries for the same employer for about seven years, three and a half years of which were in Colombia, while petitioner had but one and a half years' service in a foreign country; his service in the Pacific Islands was not in foreign countries. Harvey paid taxes while in Colombia, learned to speak the language, traveled over the country and had Colombians working for him, while petitioner did none of these things. In fact petitioner's stay in Saudi Arabia was largely restricted to his work and he could not, except in compliance with the Company's regulations, go outside of his zone of employment. He lived in dormitories with other Americans who like himself, had gone over to do a specific job. As we construe the evidence, the petitioner was a mere *91 sojourner on a temporary employment for a definite duration, and can not be considered a bona fide resident of a foreign country. Decision will be entered for the respondent.